103 Cal.App.3d 840 (1980)
163 Cal. Rptr. 322
THE PEOPLE, Plaintiff and Respondent,
v.
ALMON BOYD SMITH, Defendant and Appellant.
Docket No. 19411.
Court of Appeals of California, First District, Division Three.
March 27, 1980.
*841 COUNSEL
Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Peter R. Silten, Deputy State Public Defender, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Nathan D. Mihara, Deputy Attorneys General, for Plaintiff and Respondent.
*842 OPINION
TAKEI, J.[*]
Appellant Almon Boyd Smith was convicted on January 26, 1979, after a plea of nolo contendere, of one count of embezzlement in violation of Penal Code section 507. On March 1, 1979, he was given a suspended sentence of three years during which time he was placed on probation with one year in county jail as a condition thereof. Pursuant to Penal Code section 1538.5, subdivision (m) Smith appeals the trial court's denial of his motion to suppress evidence seized in a postbooking search of his mother's wallet, contending that the search was unconstitutional and a violation of the jail authorities' statutory duty to safeguard her property under Government Code section 26640. As one against whom the fruits of that search were introduced into evidence, Smith's standing to make this challenge is settled under California law.[1]
On or about January 6, 1978, appellant rented a 1977 two-door blue Ford LTD, license number 617 SCY, from Budget Rent-A-Car in Berkeley. The car was never returned. On his rental application, Smith listed his address as 1175 University Avenue, No. 47, a room at the Berkeley Plaza Motel. Budget Rent-A-Car filed an embezzlement report with the police and Officer Michael Stafstrom was assigned to investigate. Some time prior to February 13, 1978, Officer Stafstrom went over to the Berkeley Plaza Motel and spoke to the manager, Don Hubbs. Hubbs told him that appellant and his mother, Zeel Harris, had begun renting room No. 47 in August 1977, but that they had moved out some time ago. He also told the officer that Smith and Harris had arrived in August in a cream-colored Chevrolet, but that later he had seen them driving a blue Ford LTD.
Until February 13, 1979, all of Officer Stafstrom's efforts to locate Smith and the Ford LTD failed. On that date, however, he learned that Zeel Harris had been arrested the night before on a warrant out of Santa Ana charging her with embezzlement and grand theft of a 1977 cream-colored Chevrolet and that she had been booked into Berkeley city jail. Shortly thereafter, at the prisoners' property facility where Harris' belongings were stored, Officer Stafstrom conducted a warrantless search of her purse, hoping 1) to ascertain her current address in an *843 effort to find Smith and 2) to find the keys to the stolen Chevrolet. He was successful on both counts. Inside the purse was a wallet which contained the Chevrolet keys and Harris' driver's license. On the back of the license was written an address on Grizzly Peak Boulevard. The officer saw the Ford LTD in plain view at that address and had it seized and towed.
(1) Smith seeks to suppress the Ford LTD on the grounds that Stafstrom's search did not fall within any recognized exception to the warrant requirement. His appeal thus presents a question novel to this jurisdiction: once an arrestee's personal effects have been inventoried and inspected during a booking search, do they remain "fair game,"[2] that is, subject to warrantless searches without probable cause[3] for the period of incarceration?
Whenever one embarks on any warrantless search analysis, one must keep the following words uppermost in mind: "`[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment  subject only to a few specifically established and well-delineated exceptions.'" (Coolidge v. New Hampshire (1971) 403 U.S. 443, 454-455 [29 L.Ed.2d 564, 576, 91 S.Ct. 2022]; Katz v. United States (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507].)
The so-called booking search exception has been upheld repeatedly, usually on a theory that it is really a search incident to arrest with an inconsequential time lag. (People v. Ross (1967) 67 Cal.2d 64, 70-71 [60 Cal. Rptr. 254, 429 P.2d 606], reversed on other grounds sub nom. Ross v. California (1968) 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850]; People v. Superior Court (Murray) (1973) 30 Cal. App.3d 257, 263 [106 Cal. Rptr. 211] and cases cited; see, People v. Maher (1976) 17 Cal.3d 196, 201 [130 Cal. Rptr. 508, 550 P.2d 1044].) This was the analysis used by the Supreme Court in United States v. Edwards (1974) 415 U.S. 800, 803 [39 L.Ed.2d 771, 775-776, 94 S.Ct. 1234].
Edwards was based on the following facts. Defendant had been arrested late at night on suspicion of having attempted to break into a *844 post office. He was taken to the local jail facility and locked into a cell, but because the authorities had no jail garb immediately available, he was allowed to retain his clothing overnight. Investigation at the post office revealed that the instrument used to pry open the window had left some paint chips on the sill. Edwards' clothes were taken from him the next morning, examined, and found to contain paint chips matching those found at the scene. The chips were admitted into evidence.
The Edwards majority found in that case that the administrative booking process incident to custodial arrest had not ended by the time Edwards was put in his cell. (415 U.S. at p. 804 [39 L.Ed.2d at p. 776].) It therefore felt constrained to hold that seizure of his street clothes involved "no more than taking from respondent the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of arrest or immediately upon arrival at the place of detention." (415 U.S. at p. 805 [39 L.Ed.2d at p. 777]; italics added.)
A clear distinction may thus be drawn between Edwards and the case at bar. There is no dispute that here the booking process had been wholly completed. In addition, Harris' wallet was no longer in her possession but had been safely stored in a locked container.[4] It is settled that search incident to arrest is limited to the arrestee's person and "the area from within which he might gain possession of a weapon or destructible evidence." (Chimel v. California (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034]; People v. Flores (1979) 100 Cal. App.3d 221 [160 Cal. Rptr. 839].) In Edwards this requirement was satisfied. Here it was not.
We express no opinion regarding the continued validity of nonconsensual booking searches after Chadwick[5] and its progeny. It is *845 unnecessary that we do so, since even if the initial intrusion into Harris' purse can be upheld as coming within a booking search exception, Officer Stafstrom's search cannot be similarly characterized.
As with other exceptions to the warrant requirement, any authorization to search pursuant to the booking process must be limited to "`the circumstances which rendered its initiation permissible.'" (Chimel v. California (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) Here all purposes which might underlie a booking search exception had been fully served the night before the warrantless search at issue here. Indeed, Officer Stafstrom himself testified that his only reason for conducting the second search was to look for evidence. Therefore, even assuming that the first intrusion was lawful, since Stafstrom did not conduct a booking search, we must find another exception to the warrant requirement in order to justify his actions.
The only argument to be made is that Harris' privacy interest in the items seized by Stafstrom was so dissipated by the first search as to render the "second look" inconsequential, i.e., not a search, from the standpoint of the Fourth Amendment.
Cases in other jurisdictions in which the issue has been considered are in conflict.[6] The question is not settled by Edwards.[7] We conclude that since the officer's purpose in inspecting Harris' purse and wallet a second time was to look for at least one item not previously noted (the current address), and items whose evidentiary value had not been previously appreciated (the address and keys), the inspection involved an intrusion into whatever vestige of privacy remained to Harris and thus did constitute a search.
To declare that arrestees have no further privacy interest in their personal property once it is subjected to a booking search would mean that *846 all accused persons, whether subsequently found innocent or guilty, would be subject to having their effects rummaged through at will during the entire period of their incarceration. This is a result we cannot condone.
We find that the warrantless search here was unlawful and the evidence secured as a result of the search should have been suppressed. The judgment of conviction is also reversed. (Wong Sun v. United States (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].)
White, P.J., concurred.
Feinberg, J., concurred in the judgment.
Respondent's petition for a hearing by the Supreme Court was denied May 22, 1980. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] People v. Gale (1973) 9 Cal.3d 788, 793 [108 Cal. Rptr. 852, 511 P.2d 1204]; Kaplan v. Superior Court (1971) 6 Cal.3d 150, 156-162 [98 Cal. Rptr. 649, 491 P.2d 1] and cases cited.
[2] See discussion of this subject in 2 LaFave, Search and Seizure, section 5.3(b), hereinafter referred to as LaFave.
[3] Respondent does not contend that Stafstrom had probable cause to search Harris' purse. The district attorney argued at trial that Stafstrom was entitled to search without it.
[4] LaFave suggests that Edwards' reliance on the incident to arrest exception is misplaced and that the case can better be explained as involving a plain view seizure, since respondent's clothes were still on his back. (LaFave, supra, at p. 314.)
[5] United States v. Chadwick (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]. See also People v. Minjares (1979) 24 Cal.3d 410 [153 Cal. Rptr. 224, 591 P.2d 514]; People v. Pace (1979) 92 Cal. App.3d 199 [154 Cal. Rptr. 811]; People v. Flores (1979) 100 Cal. App.3d 221, 232 fn. 5 [160 Cal. Rptr. 839] (dictum). Cf., People v. Rucker (1980) 26 Cal.3d 368 [162 Cal. Rptr. 13, 605 P.2d 843], permissible scope of inquiries during booking procedure.
[6] See United States v. Jenkins (2d Cir.1974) 496 F.2d 57, cert. den. 420 U.S. 925 [43 L.Ed.2d 394, 95 S.Ct. 1119]; United States v. Grill (5th Cir.1973) 484 F.2d 990. Contrast, Brett v. United States (5th Cir.1969) 412 F.2d 401; People v. Trudeau (1971) 385 Mich. 276 [187 N.W.2d 890].
[7] Despite dictum that it would permit retrieval of property seized on booking, but thereafter stored in the property room. (415 U.S. 800, 807 [39 L.Ed.2d 771, 777-778]. LaFave at p. 319.) It is not clear whether the Edwards court was referring exclusively to property whose evidentiary value is recognized at the initial search stage or whether it would also permit a second, or fiftieth, look at property which originally appeared innocuous.