[No. AO18363. First Dist., Div. Three. May 4, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT MILTON PANFILI et al., Defendants and Appellants.

388

**COUNSEL**

James E. Allen, Jr., and Catalina Lozano, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E.

Niver and Richard G. Tullis, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTT, J.**—On May 26, 1982, appellants Albert Milton Panfili and Anthony Vincent Drago each pleaded guilty to two counts of robbery (Pen. Code, § 211) and use of a firearm (Pen. Code, §§ 12022.5, 12022, subd. (a)). Each was sentenced to state prison. The guilty pleas were entered after appellants' motion to suppress evidence under Penal Code section 1538.5 was denied, and the People's motion under Penal Code section 1538.5, subdivision (j), to overturn the magistrate's order suppressing evidence was granted.

I

On October 4, 1981, the Stop 'N Go Market in Concord was robbed. The cashier identified appellant Panfili as the man who held him up at gunpoint and escaped with $45 to $50. A passerby observed a man run out and get into what appeared to be a brown Pontiac Catalina. The car, driven by another, sped off.

Later the same evening, a Pleasant Hill 7-Eleven store was robbed. Appellant Drago was positively identified by a store employee as the robber. Another 7-Eleven store, in Concord, was robbed two days later. Appellant Panfili was again identified as the perpetrator of the crime. The employee making the identification had given the robber a number of marked bills, including a $1 silver certificate with pinholes in it. An approaching customer observed the robbery in progress, and memorized the license plate number of the car in which the robber escaped. The customer identified appellant Drago as the driver.

Within hours, police spotted a brown Pontiac Catalina with the reported license number parked approximately five miles from the most recent robbery. A registration check revealed that the car had recently been sold to an unnamed Concord resident, who was planning to leave the area. An officer entered the car, in which keys, clothing, cash and a wallet were in plain view, in order to obtain identification of the current owner. Appellant Panfili's driver's license and other identification were found in the wallet, on the dashboard; a new bill of sale indicating that the car had been sold to appellant Drago was also found.

Later the same day, the Concord Police Department received information concerning the whereabouts of appellants. The Chico Police Department was immediately contacted, and appellants were arrested in Chico that evening. The Chico force was instructed to set aside the personal property of appellants, so that the Concord investigating officer could look for specific marked bills. One of the bills discussed was found by the arresting officer in Chico, among appellant Panfili's personal effects. Another was found in appellant Drago's wallet, after transfer to the Concord jail.

Appellants were charged by information with all three armed robberies. Both pleaded guilty to the two Concord holdups.

## II

Appellants contend that the warrantless search of the Pontiac Catalina and of the wallet found on its dashboard was illegal. They urge that the fruits of that search, the identity of appellants, must therefore be suppressed. They conclude that their convictions should be reversed.

Appellants disagree with the findings of the trial judge who, after considering the entire case record and the applicable law, ruled "that both legal and exigent circumstances existed to warrant the officer to enter the car, seize the various items therein (many of which were in plaint [*sic*] sight from outside the vehicle), to look inside the wallet for the purpose of trying to identify the wrongdoer. In our urban society of today with its concommitant [*sic*] of urban sprawl, to find the suspect car one hour and twenty minutes after the crime had been reported, engine warm and the car being only five miles from the scene of the robbery, is neither unusual nor so attenuated either by time or distance, as to make the officer's conduct in this case illegal."

■ A warrantless vehicle search is permissible, provided (1) exigent circumstances exist, rendering the obtaining of a search warrant impossible or impracticable, and (2) there is probable cause for the search. (*People* v. *Johnson* (1981) 30 Cal.3d 444, 450 [179 Cal.Rptr. 209, 637 P.2d 676]; *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417]; *People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208].) We believe that the trial court was correct in concluding that these conditions were met and the warrantless search thus justified. However, this court need not reach that conclusion to uphold the court's ruling. ■ For where, as here, the only evidence obtained through the challenged search related to the identity of the suspects, and independent sources of identification exist, no reversible error can be found.

(*People* v. *Teresinski* (1982) 30 Cal.3d 822 [180 Cal.Rptr. 617, 640 P.2d 753].)

In *Teresinski, supra,* 30 Cal.3d 822, mug shots of the defendant taken after an illegal detention were shown to a robbery victim. The victim identified the defendant, but his preliminary hearing testimony was suppressed by the trial court as the product of illegally obtained evidence. The Supreme Court reversed, holding that "a victim's identification testimony is admissible if based upon his independent recollection untainted by illegal police conduct." (*Teresinski, supra,* at p. 827.) Because the victim could identify the robber by sight, without relying on any information gathered through illegal activity, the identification testimony was not derived from a violation of defendants' constitutional rights. (*Id.,* at p. 839.) The testimony, therefore, could not be suppressed. This was true even though the police had no grounds to suspect this particular person of the robbery, prior to their illegal actions. (*Id.,* at p. 835.)

Similarly, suppression of the identity of these appellants cannot be justified. Full descriptions of the robbers and their vehicle were provided the police prior to the car search. These eyewitnesses were capable of identifying appellants, without relying on any information gathered by the police. As no more than the names and addresses of appellants was seized from the car, no suppressible evidence is here involved. For the identity of criminal suspects will not be suppressed, even if the trail leading to them was marked by illegally seized evidence, where witnesses can make a positive identification based upon independent memory. (*Teresinski, supra,* 30 Cal.3d at p. 835; see also *United States* v. *Crews* (1980) 445 U.S. 463 [63 L.Ed.2d 537, 100 S.Ct. 1244].) The trial court properly overturned the magistrate's suppression order, regardless of the legality of the automobile search.

### III

▮ Appellants each contend that their personal effects were searched illegally, after the booking procedure had been completed. Appellant Drago challenges the search made of his wallet after being transported from Chico to Concord, at which time the $1 silver certificate taken during the October 6th 7-Eleven robbery was discovered. Appellant Panfili argues that the search of his personal effects made after booking in Chico, which revealed his possession of "bait" money from one robbery, was an unjustified infringement upon his right of privacy.

▮ It is well settled that a person being processed for incarceration may be searched. The recognized purposes of such a search are "to maintain jail security, to discover evidence pertaining to the crime charged, and to safe-

guard the prisoner's personal belongings." (*People* v. *Maher* (1976) 17 Cal.3d 196, 200 [130 Cal.Rptr. 508, 550 P.2d 1044].) Police have not merely a right but an affirmative duty, statutorily defined, to safeguard the property of a prisoner.[1] Officers also are entitled to make a reasonable inspection and examination of such property, to determine if it was stolen or used in a crime; segregation of the property pursuant to internal police policies regarding arrest and booking does not derogate this authority. (*People* v. *Superior Court* (*Gunn*) (1980) 112 Cal.App.3d 970, 975-976 [169 Cal.Rptr. 559].)

A significant limit on the ability to examine seized property is that the inspection must be incident to a lawful arrest or booking procedure. Where the booking process has been wholly completed, and the property in question is secured beyond the reach of the arrested person, a warrantless search constitutes an invasion of the arrestee's remaining privacy interest in that property. (*People* v. *Smith* (1980) 103 Cal.App.3d 840, 844-845 [163 Cal.Rptr. 322].)

In *Smith, supra,* 103 Cal.App.3d 840, the defendant's mother had already been booked on a separate charge when police searched through her belongings. Defendant's address and keys to a car he had allegedly stolen were found in the mother's wallet, inside her purse. In declaring the search unconstitutional, this court noted that the mother's booking search had been completed previously; as her personal effects had been fully inventoried and inspected, no exception existed allowing a warrantless search. (*Id.,* at p. 843.)

The facts of the present case are distinguishable. Here, the arresting officer in Chico was instructed merely to isolate the property and preserve it for a more thorough examination by the Concord police. Therefore, although the Chico officer did discover one marked bill lying loose in appellant Panfili's property bag, he did not make a thorough search of appellant's personal effects. Instead, upon transfer of appellants, the investigating officer from Concord made a more detailed inspection of the property seized

---

[1]Penal Code section 1412 provides that "[w]hen money or other property is taken from a defendant, arrested upon a charge of a public offense, the officer taking it must at the time give duplicate receipts therefor, specifying particularly the amount of money or the kind of property taken . . . ." Implicit in this statutory requirement is the belief that "money or other property" may be seized lawfully from one arrested for a crime. (*People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606], revd. on other grounds (1968) 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850].) Government Code section 26640 more explicitly requires that "[t]he sheriff shall take charge of, safely keep, and keep a correct account of, all money and valuables found on each prisoner when delivered at the county jail. . . ." Case law holds that the latter section governs the activity of municipal police officers as well as sheriffs. (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 119, fn. 5 [113 Cal.Rptr. 102, 520 P.2d 726].)

and found the stolen silver certificate in appellant Drago's wallet. The officer testified that, in any event, his department customarily reinventoried all property taken by other police departments from suspects later transferred to Concord. Thus both discoveries were made during an ongoing booking search and inventory procedure. The examination and inventory was not only permitted but was, as discussed *supra,* required by statute.

■ Case law firmly establishes that where the warrantless search of a purse or wallet occurs during the booking process, no violation of a prisoner's rights exists. (*People* v. *Bundesen* (1980) 106 Cal.App.3d 508, 516 [165 Cal.Rptr. 174]; *People* v. *Harris* (1980) 105 Cal.App.3d 204, 214 [164 Cal.Rptr. 296]; *People* v. *Bullwinkle* (1980) 105 Cal.App.3d 82, 88 [164 Cal.Rptr. 163]; *People* v. *Balassy* (1973) 30 Cal.App.3d 614, 622-623 [106 Cal.Rptr. 461]; *People* v. *Tennessee* (1970) 4 Cal.App.3d 788, 792 [84 Cal.Rptr. 697].) The privacy interest in items found in plain view is even lower. (*People* v. *Bradley* (1981) 115 Cal.App.3d 744, 751 [171 Cal.Rptr. 487].) The search of appellants' personal effects thus was proper.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

Petitions for a rehearing were denied June 3, 1983, and appellants' petitions for a hearing by the Supreme Court were denied July 27, 1983.