THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PAUL HADLEY, Defendant-Appellee.

Fifth District   No. 5—87—0188

Opinion filed January 13, 1989.

HARRISON, J., dissenting.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Edwin J. Anderson, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

This cause comes before us on appeal by the State of Illinois from an order of the circuit court of Madison County suppressing as evidence a pair of tennis shoes seized from the defendant, Paul Hadley. We reverse.

The evidence adduced at the suppression hearing, as pertinent, is as follows. In the early morning hours of January 22, 1986, a Clark gasoline station in Granite City, Illinois, was burglarized. Among the items taken in the burglary were "biker" wallets, cigarettes and sunglasses which had been for sale in the station.

In the evening of January 22, 1986, an individual entered the Granite City police station with a biker wallet similar to those which had been stolen from the Clark station. He told Lieutenant Pomeroy of the Granite City police department that he had purchased the wallet from Paul Hadley at Goldie's Tavern in Granite City. The individual stated that Hadley had had a bag of "things," including wallets, which he was selling.

Lieutenant Pomeroy gave the wallet to Officer Walkenbach to verify that it was, in fact, the same kind of wallet as those which had been stolen from the Clark station. Walkenbach did so. Lieutenant Pomeroy then sent Officer Walkenbach and Officer Tapp to Goldie's Tavern to determine if there was someone there by the name of Paul Hadley selling items that possibly had been taken in the burglary.

Officers Tapp and Walkenbach proceeded to Goldie's Tavern, where they were met outside by a white female. She informed the of-

ficers that Paul Hadley was in the tavern sitting at the bar and gave the officers a description. When the officers entered the tavern, they observed a white male sitting at the bar who matched the description they had been given. The male produced identification indicating that his name was Paul Hadley. He did not have in his possession any items that possibly could have been taken in the burglary.

Hadley was asked, and agreed, to accompany Officer Walkenbach outside. Officer Tapp remained inside the tavern, where he inquired of the bartender whether Hadley had been trying to sell any items. The bartender responded that Hadley had been in the tavern earlier in the day attempting to sell cigarettes and sunglasses out of a green paper or plastic trash bag. The bartender had asked Hadley to "take his business elsewhere." Hadley had left, but later returned without the trash bag.

Officer Walkenbach and Hadley went outside, where Hadley stated that he knew nothing about the burglary. Hadley was handcuffed and transported to the Granite City police department, where he was booked. As part of the police department's standard procedure, Hadley's tennis shoes and jewelry were taken from him and placed in the department's prisoner property room.

The following morning, January 23, 1986, the lead investigator on the burglary, Detective Sergeant Don Knight, suggested to Detective Rosenburg that Hadley's shoes be seized as evidence of the burglary. Detective Rosenburg testified that he decided to seize Hadley's shoes after he saw a piece of plexiglass which had been taken from the burglary scene and had footprints on it. Rosenburg removed Hadley's shoes from the prisoner property room and compared the soles to the prints on the plexiglass. He determined that they appeared to be similar.

Hadley was released from custody at 2:01 p.m., January 23, 1986, because an assistant State's Attorney advised that there was insufficient evidence upon which to obtain an arrest warrant. The assistant State's Attorney further advised Detective Rosenburg to forward Hadley's shoes to the crime lab; no search warrant was sought or obtained. Hadley was released from custody, but his shoes were retained by the Granite City police department and forwarded to the crime lab.

At the conclusion of the hearing, the trial court ruled that the police had had probable cause to arrest defendant at the time they did so, and the arrest was, therefore, lawful. However, the court ruled that the warrantless seizure of defendant's shoes violated defendant's fourth amendment rights and ordered them suppressed as evidence. The court explicitly found that the shoes were seized at the time, or

before, defendant was released from custody and that there were no factors upon which to determine that a warrantless seizure of the shoes was necessary.

The State appeals, arguing that defendant's shoes were properly seized without a warrant for three reasons: the shoes were seized pursuant to standard jail procedure; the shoes were seized incident to the lawful arrest of defendant; and there were exigent circumstances requiring an immediate, warrantless seizure of the shoes. We agree with the State and reverse the order of the trial court suppressing the shoes as evidence.

■ We start by pointing out that the trial court found that defendant was lawfully arrested. No one contends otherwise, and we agree that defendant was lawfully arrested and was lawfully in custody. The fact that defendant was released from custody less than 24 hours later does not change the finding of probable cause for the arrest or the lawfulness of the arrest. *People v. Gholston* (1984), 124 Ill. App. 3d 873, 883, 464 N.E.2d 1179, 1186, (a determination as to whether probable cause for an arrest existed must be judged upon the facts and circumstances known at the time of the arrest).

■ The defendant's shoes were initially taken by the police as part of their standard booking procedures. The testimony indicates that when suspects are formally arrested, any personal property in their pockets, as well as any jewelry and shoes, are taken from them prior to their being placed in a cell. Such a search and/or seizure does not violate the fourth amendment proscription against unreasonable searches and seizures. It has long been recognized that it is reasonable for police to search and/or seize, without a warrant, the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station incident to booking and jailing the suspect. (*Illinois v. Lafayette* (1983), 462 U.S. 640, 643, 77 L. Ed. 2d 65, 69, 103 S. Ct. 2605, 2608.) As the United States Supreme Court pointed out in *Lafayette,* the practical necessities of routine jail administration may even justify taking a prisoner's clothes before confining him. (462 U.S. at 645, 77 L. Ed. 2d at 71, 103 S. Ct. at 2609.) Such an inventory procedure is necessary to ensure the safety and integrity of the jailhouse, and to protect the prisoner from himself and others.

■ Once the police have lawfully seized property of an accused pursuant to a valid inventory procedure, no warrant is required to retrieve the property from the property room to examine it further for evidence. (*People v. Deacon* (1985), 130 Ill. App. 3d 280, 290, 473 N.E.2d 1354, 1361, *cert. denied* (1985), 474 U.S. 921, 88 L. Ed. 2d

260, 106 S. Ct. 253.) A second inspection of personal effects which have been previously exposed to police view under unobjectionable circumstances does not invade any substantial privacy interest of the accused. (*People v. Richards* (1983), 94 Ill. 2d 92, 96, 445 N.E.2d 319, 321.) However, the cases make it clear that a second look may only be taken at property which is in plain view or has already been exposed to the police. *Richards*, 94 Ill. 2d 92, 445 N.E.2d 319.

■ The property at which the police took a second look in the case *sub judice* was the soles of defendant's tennis shoes. These soles were in plain view and had already been exposed to the police. They did not constitute new evidence not previously seen (although, as in *Richards*, at first look the police did not know the property was evidence), nor did defendant have any reasonable expectation of privacy in them, as he might in items concealed in a container, or the inside of a locked motor vehicle. As did the necklace in *Richards*, the soles of defendant's tennis shoes legitimately came into plain view of the police officers and thereafter remained in their possession, custody and control.

We find this case to be similar in many respects to *United States v. Edwards* (1974), 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234, in which the United States Supreme Court held that no warrant was required to seize an accused's clothing while he was in lawful custody. That the accused's clothing was not seized until approximately 10 hours after his arrest made no difference, as the accused was no more imposed upon at that time than he would have been immediately following his arrest.

> "It must be remembered that on both May 31 and June 1 the police had lawful custody of Edwards and necessarily of the clothing he wore. When it became apparent that the articles of clothing were evidence of the crime for which Edwards was being held, the police were entitled to take, examine, and preserve them for use as evidence, just as they are normally permitted to seize evidence of crime when it is lawfully encountered. *** Indeed, it is difficult to perceive what is unreasonable about the police examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest." (415 U.S. at 806, 39 L. Ed. 2d at 777, 94 S. Ct. at 1238.)

The Supreme Court found that it was irrelevant whether the police could have obtained a search warrant, for the test is not whether it is reasonable to procure a search warrant, but whether the search itself was reasonable, which, the Court found, it was. Finally, the Court

stated that the same is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the property room of the jail, and at a later time searched and taken for use at the subsequent criminal trial.

Once the property is lawfully seized, it may later be subjected to laboratory analysis, and the test results are admissible at trial. *Edwards*, 415 U.S. at 804, 39 L. Ed. 2d at 776, 94 S. Ct. at 1237; *People v. Hester* (1968), 39 Ill. 2d 489, 514, 237 N.E.2d 466, 481.

*Edwards* has been interpreted by the Illinois Supreme Court to mean that when an object lawfully came into plain view at the time of a search upon the arrestee's arrival at the place of detention, later investigation establishes that the item is of evidentiary value and the item remains in police custody as part of the arrestee's inventoried property, then it is permissible for the police, without a warrant, to retrieve that object and thereafter deal with it as an item of evidence. (*People v. Richards* (1983), 94 Ill. 2d 92, 97, 445 N.E.2d 319, 321-22.) That is precisely the situation presented in the case now before us.

Defendant seeks to distinguish this case from *Edwards* and *Richards* on the basis that in those cases the defendants were apparently retained in custody along with their property, while in this case, the defendant was released while his property was retained by the police as evidence. This seems to us to be a distinction without a difference. As in *Edwards*, at the time defendant's property was seized, both he and his property were in lawful police custody. When it became apparent that the property was possibly evidence of a crime, the police were entitled to seize it, just as they are normally permitted to seize evidence of crime when it is lawfully encountered. That the defendant was released from custody after the lawful seizure of his property does not invalidate the lawful seizure.

In *People v. Pruitt* (1974), 16 Ill. App. 3d 930, 307 N.E.2d 142, *cert. denied* (1974), 419 U.S. 968, 42 L. Ed. 2d 184, 95 S. Ct. 232, the defendant was lawfully arrested for a robbery and taken into police custody. At the police station, some of his clothing was seized and a hair sweeping was conducted, revealing glass and paint chips possibly connecting defendant to the crime. When the victim was unable to positively identify the defendant as the robber, defendant was released from custody. His clothing and the hair sweeping were retained by the police and subjected to laboratory analysis. The trial court concluded that defendant's arrest had been lawful and that the seizure of his clothing and the hair sweeping while he was detained did not violate his fourth amendment rights. Defendant conceded that the seizure of the clothes and hair sweeping was valid, but argued on appeal

that his clothing and the hair sweeping were illegally retained by the police in violation of section 108—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 108—2).

Section 108—2 provides that if a person arrested is released without a charge pending against him, any property seized, other than contraband, must be returned to him. Defendant argued that failure to comply with this provision mandated suppression of any evidence unlawfully retained. The appellate court held that violation of section 108—2 is only a violation of a statutory right, not a constitutional right, and suppression of the evidence is not required for such a violation. The court held that the initial seizure of the items had been lawful and retention of the items did not violate defendant's fourth amendment rights because the items could have been easily destroyed.

Similarly in *Cupp v. Murphy* (1973), 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000, the United States Supreme Court allowed the warrantless seizure of fingernail scrapings from a defendant lawfully detained although he was subsequently released from custody. The Court based its holding in part on the fact that the evidence seized was "highly evanescent" and easily destroyed. The Court pointed out that the defendant was "sufficiently apprised of his suspected role in the crime to motivate him to attempt to destroy what evidence he could without attracting further attention." 412 U.S. at 296, 36 L. Ed. 2d at 906, 93 S. Ct. at 2004.

As in *Pruitt* and *Cupp*, we see nothing wrong with the police retaining items lawfully seized as evidence even though the defendant is released from custody. The property seized in the case *sub judice*, as in *Pruitt* and *Cupp*, could have been easily destroyed. The defendant could have thrown away the tennis shoes, hidden them or even destroyed them. The defendant argues that the State has waived any argument relating to "exigent circumstances." We find no waiver, as the trial court specifically ruled on this particular point and based its decision in part on what it perceived to be a lack of exigent circumstances. In such a case, the rationale underlying the waiver rule does not apply.

The tennis shoes were initially lawfully seized as evidence. As in *Pruitt* and *Cupp*, the retention thereof after the release of defendant did not violate defendant's fourth amendment rights.

Because we find that the defendant was lawfully arrested and his tennis shoes were lawfully seized without a warrant, we reverse the order of the circuit court of Madison County suppressing as evidence the defendant's shoes.

For the foregoing reasons, the order of the circuit court of Madison County is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded for further proceedings.

LEWIS, J., concurs.

JUSTICE HARRISON, dissenting:

The authorities cited by the majority involved situations in which the evidence in question was lawfully in police custody at the time of the challenged search. Such was not the case here. Although, as the majority correctly observes, defendant now appears to have been lawfully arrested and was lawfully in custody when his shoes were originally seized, the assistant State's Attorney decided, at the time, that there was no probable cause to hold him. He was therefore released. Once this happened, the police no longer had any lawful authority to continue to hold his shoes for inventory purposes, for scientific examination, or for any other reason. No claim has been made that defendant voluntarily agreed to allow the police to retain the shoes, and, by State law, the police were required to return them to him upon his release. Section 108—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 108—2) expressly provides:

> "If the person arrested is released without a charge being preferred against him all instruments, articles or things seized, other than contraband, shall be returned to him upon release."

Because the police ceased to have a lawful claim on defendant's shoes following his release, they were prohibited by the fourth amendment to the Federal Constitution from subjecting the shoes to scientific examination, or even just continuing to hold them, without first obtaining a warrant. No warrant was secured here. Accordingly, I must conclude that the circuit court acted properly in granting defendant's motion to suppress.

The majority attempts to justify a contrary position by citing *People v. Pruitt* (1974), 16 Ill. App. 3d 930, 307 N.E.2d 142, *cert. denied* (1974), 419 U.S. 968, 42 L. Ed. 2d 184, 95 S. Ct. 232, but its reliance on that case is misplaced. In *Pruitt*, the constitutionality of the seizure of the evidence was not contested. Whatever remarks the court may have made on the subject were therefore nothing more than *dicta*.

As an alternative rationale for its decision, the majority argues that retention of the shoes following defendant's release was justified

by exigent circumstances. In particular, the majority suggests that retention of the shoes was proper because "[t]he defendant could have thrown away the tennis shoes, hidden them or even destroyed them." (179 Ill. App. 3d at 158.) I find this contention singularly unpersuasive. No serious claim could be made the tennis shoes have the "highly evanescent" quality of the scrapings taken from the defendant's fingernails in *Cupp v. Murphy* (1973), 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000. While I do not dispute that tennis shoes are susceptible of being concealed or destroyed, the same can be said for almost all evidence.

In making its exigent circumstances argument, the majority overlooks a fundamental rule, namely, that the potential destruction of evidence, standing alone, does not excuse obtaining a warrant. (*People v. Cohen* (1986), 146 Ill. App. 3d 618, 625, 496 N.E.2d 1231, 1236.) For the exigent circumstances exception to the fourth amendment prohibition against warrantless and nonconsensual searches to apply, the police must fear imminent destruction of evidence. *United States v. Rivera* (7th Cir. 1987), 825 F.2d 152, 156, *cert. denied sub nom. Robles v. United States* (1987), 484 U.S. 979, 98 L. Ed. 2d 492, 108 S. Ct. 494.

In this case, the police could claim no such fear. Unlike the situation in *Cupp v. Murphy* (1973), 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000, the evidence here, the pair of tennis shoes defendant had been wearing, was safely stored in the police department's prisoner property room at the time the police decided to retain it for further examination. There is no indication that defendant ever attempted to hide, deface, or destroy the shoes when they were initially taken from him, nor is there any indication that defendant might have attempted to hide, deface, or destroy the shoes had they been returned to him pending issuance of the warrant. Defendant was not, after all, given any reason to believe that his shoes might be used as evidence against him. As the majority points out, the shoes were initially seized as part of the routine inventory procedure followed by the police when booking a suspect, not as part of any specific investigation into their evidentiary value. Under the circumstances, any exigency was purely hypothetical.

For the foregoing reasons, I would affirm the order of the circuit court of Madison County granting defendant's motion to suppress. I therefore dissent.