THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. STEVEN OTT, Defendant-Appellee.

First District (4th Division)   No. 1—89—2535

Opinion filed February 14, 1991.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Paul Gliatta, Assistant State's Attorneys, of counsel), for the People.

William Hedrick, of Skokie, for appellee.

JUSTICE McMORROW delivered the opinion of the court:
Defendant was charged by indictment for the murder of his girl-friend. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).) He filed a motion to

quash his arrest and to suppress certain inculpatory statements he made. Following an evidentiary hearing, the trial court determined that the police had probable cause to arrest defendant at the scene of the crime. The trial court also found that defendant had consented to police officers' search of defendant and his personal belongings, at the scene, for drugs and weapons. However, the court determined that defendant had not consented to the officers' reading of an inculpatory note that had been written by defendant, which the officers discovered during their consensual search of defendant's personal effects. The trial court also concluded that police officers' seizure of the note tainted subsequent incriminating statements made by defendant during police questioning, because defendant had been confronted with this note during the interrogation. Based upon these determinations, the trial court suppressed the note written by defendant as well as his oral and written inculpatory statements to authorities. The State appeals from the trial court's ruling.

We conclude that the police officers had probable cause to arrest defendant before the officers discovered the note written by defendant that was obtained during the officers' consensual search of the defendant for drugs or weapons. We also determine that because there was probable cause to arrest defendant at that moment, the officers' reading of the note constituted a lawful search and seizure of defendant's personal effects for incriminating evidence that defendant might otherwise destroy or conceal. As a result, the trial court erred when it suppressed defendant's note and his subsequent inculpatory statements during police questioning. Accordingly, we reverse and remand for further proceedings.

The record contains the following pertinent facts. On and prior to May 27, 1988, defendant lived with his girlfriend, H.S., in a unit of a trailer park in Des Plaines. According to defendant, he and H.S. had a heated argument in the late hours of May 27 during which defendant accused her of infidelity. At approximately 12:30 a.m. on May 28, defendant left the trailer, drove his automobile to a nearby park, and slept in the vehicle until 11:30 a.m., when he returned to the trailer. Upon entering the residence, defendant discovered H.S. lying on a mattress. She appeared to be dead. Defendant went to his mother's trailer, which was located nearby, and authorities were summoned to the scene. Local paramedics discerned that H.S. may have died of suspicious causes and alerted the Des Plaines police department.

Officers Cheryl O'Malley and Bernie Wolter of the Des Plaines police department testified that when officers arrived at the scene, it appeared that H.S. might have been sexually assaulted and murdered.

She was lying on her back across two mattresses on the floor and her nightclothes were pulled up. There was no significant sign of blood loss from the victim on the mattress or anywhere else in the trailer.

Although the door to the defendant's trailer had both a key lock and a chain lock, there was no sign of forced entry into the trailer through the door or through any windows in the trailer. When the police asked defendant his whereabouts during the preceding evening, he gave the account set forth above. Defendant appeared highly agitated and erratic while he spoke with the police officers. Because his behavior was causing a group of people to gather at the scene, officers suggested that defendant sit in the back seat of a police vehicle, and he agreed. Defendant sat in the car with his legs outside the vehicle and his feet on the ground. He repeatedly stated that he could not understand "why they had to rape *** and kill" the victim and that he had "loved" the victim. Defendant also repeatedly pounded his head against a metal grate inside the police vehicle.

Because of defendant's continued agitation, officers suggested that further discussion take place after defendant had been driven to the station in a police vehicle. Defendant assented to this suggestion. Defendant was then informed that, as a routine matter, Officers O'Malley and Wolter would have to search defendant and his personal belongings for drugs or weapons before he could be taken to the station in a police vehicle. Defendant agreed to this search. Officers O'Malley and Wolter testified that they did not believe defendant was under arrest at this time, and that if defendant had wanted to leave, there would have been no lawful reason to prevent him from doing so.

The two officers proceeded to search defendant's personal effects. As defendant handed his wallet to the officers, a piece of paper fell from the wallet to the ground. Officer O'Malley and defendant both reached down to pick up the piece of paper. However, Officer O'Malley was able to do so before defendant reached the paper. Because of its weight, size, and configuration, Officer O'Malley believed that the paper probably did not contain drugs or a weapon. Officer O'Malley testified that as she was handing the paper to Officer Wolter, defendant attempted to "grab" it from her. He was unsuccessful, and Officer Wolter took possession of the document. Officer Wolter unfolded the paper to determine that neither a razor blade nor drugs were contained therein. The officer then read part of the contents of the note written on the paper. Based upon what he read, Officer Wolter determined that there was probable cause to arrest defendant for the murder of his girlfriend. However, Officer Wolter said nothing at this time to the defendant regarding defendant's involvement in the murder,

the contents of the note, or that defendant might be under arrest for the crime.

Thereafter, Officers O'Malley and Wolter searched, without incident, the remainder of defendant's personal belongings and performed a pat-down of defendant's person. All of defendant's personal effects, with the exception of the note, were returned to defendant after the search. The note was retained in police custody. Defendant was then transported to the local police station. The entire substance of defendant's note was read by the police before additional questioning of the defendant took place.

During interrogation at the station, defendant initially denied involvement in his girlfriend's murder. When Officer Wolter asked defendant to explain certain portions of the note that had been recovered from defendant at the scene, defendant admitted that he had strangled his girlfriend. Thereafter, defendant gave an oral and written inculpatory statement to authorities.

In its ruling on the defendant's motions to quash arrest and suppress statements, the trial court determined that the police officers had probable cause to arrest the defendant for the murder of H.S. based on the totality of the circumstances known to the officers at the scene of the crime. On this basis, the court denied defendant's motion to quash his arrest. However, the trial court also concluded that defendant had not consented to Officer Wolter's reading of the note that fell from defendant's wallet, and that this document should therefore be suppressed from evidence at defendant's trial. In addition, the court found that because the defendant's inculpatory statements at the station were obtained after defendant was confronted with the contents of the note, defendant's statements during the police station interrogation should also be suppressed. The State's timely appeal followed.

The State argues on appeal that the officers had probable cause to arrest defendant before the officers read the note obtained from defendant at the scene of the crime. The State contends that because there was probable cause to arrest defendant at that time, the officers' subsequent reading of the note was not unlawful. On this basis, the State asserts that the defendant's note, as well as his inculpatory statements, should not have been suppressed.

■ The United States and Illinois Constitutions prohibit police authorities from performing a warrantless, nonconsensual search or seizure of a private citizen's property unless there is probable cause to justify an arrest of the citizen. (U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6.) Probable cause is defined as reasonable grounds to

believe that the defendant has committed a criminal offense. (*People v. Gacho* (1988), 122 Ill. 2d 221, 235, 522 N.E.2d 1146; *People v. Cabrera* (1987), 116 Ill. 2d 474, 485, 508 N.E.2d 708; *People v. Neal* (1985), 111 Ill. 2d 180, 193, 489 N.E.2d 845; *People v. Allen* (1990), 202 Ill. App. 3d 487, 490, 559 N.E.2d 1145; Ill. Rev. Stat. 1987, ch. 38, par. 107—2(1)(c).) Whether there is probable cause depends upon the totality of the circumstances known to the officers at the time of the search and seizure, bearing in mind their obligation to deter crime and apprehend offenders, and disregarding formalistic technicalities or analytical hindsight. *People v. Foster* (1987), 119 Ill. 2d 69, 83-84, 518 N.E.2d 82; *People v. Stout* (1985), 106 Ill. 2d 77, 86-87, 477 N.E.2d 498; *People v. Exline* (1983), 98 Ill. 2d 150, 154, 456 N.E.2d 112.

When there is probable cause for an offender's arrest, it is not unlawful for authorities to undertake a nonconsensual, warrantless search and seizure of property upon or nearby the accused, in order to prevent his destruction or concealment of incriminating evidence. (*Cupp v. Murphy* (1973), 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000; *People v. Hadley* (1989), 179 Ill. App. 3d 152, 158, 534 N.E.2d 395; *People v. Franklin* (1987), 159 Ill. App. 3d 923, 930-31, 512 N.E.2d 1318; see also *Chimel v. California* (1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040; *People v. Day* (1990), 202 Ill. App. 3d 536, 560 N.E.2d 482; Ill. Rev. Stat. 1987, ch. 38, par. 108—1.) Applying this precedent to the case at bar, it is necessary to determine when there was probable cause to arrest the defendant.

The trial court denied defendant's motion to quash his arrest because it determined that all of the circumstances known to the officers at the scene provided probable cause to arrest the defendant. Generally, the trial court's disposition of a motion to suppress will be upheld absent an abuse of discretion. (*People v. Murray* (1990), 137 Ill. 2d 382, 387, 560 N.E.2d 309; *People v. Evans* (1988), 125 Ill. 2d 50, 71, 530 N.E.2d 1360.) Based upon the totality of the circumstances at the scene of the crime as appearing in the record, we conclude that the officers had sufficient probable cause to arrest defendant for the murder of his girlfriend before the officers began their search of defendant's personal effects.

Defendant admitted to the Des Plaines police officers that he lived with the victim in the trailer and that he had a heated argument with her the night of the incident. In addition, defendant was highly agitated and erratic with officers at the scene. There were no signs of forced entry into the trailer where the victim had been murdered, and

no evidence to corroborate defendant's account that he had spent the night, after he left the trailer, sleeping in his car until 11:30 the following morning.

The circumstance that there was no forced entry into the trailer indicated that "defendant was part of a relatively small class of people who could have had the opportunity to commit the murder[ ]." (*People v. Montgomery* (1986), 112 Ill. 2d 517, 526, 494 N.E.2d 475; see also *People v. Hunley* (1989), 189 Ill. App. 3d 24, 35, 545 N.E.2d 188; *People v. Davis* (1981), 98 Ill. App. 3d 461, 424 N.E.2d 630.) His heated argument with the victim late in the evening of May 27 demonstrated that defendant may have had a motive to kill her. His highly erratic behavior at the scene revealed a possible consciousness of his guilt in the murder of his girlfriend. The lack of corroboration that defendant had slept in his vehicle until 11:30 a.m. also indicated that defendant had the opportunity to kill the victim. All of these circumstances, considered as a totality, provided reasonable ground to believe that defendant had murdered H.S. See *People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228.

■ Because the officers had probable cause to arrest defendant before they began their consensual search of his personal belongings for drugs or weapons, the officers could lawfully perform a nonconsensual search and seizure of items on or near defendant, in order to prevent his destruction or concealment of incriminating evidence. (*Cupp*, 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000; *Hadley*, 179 Ill. App. 3d 152; *Franklin*, 159 Ill. App. 3d 923.) Consequently, there was no constitutional infirmity in the officers' seizure of the note, their reading of the note, and their use of the note in subsequent questioning of the defendant. The trial court erred when it suppressed the defendant's note and the subsequent inculpatory statements he made to authorities during interrogation at the police station.

■ Defendant argues that he was not under arrest before the officers read the contents of the note that fell from defendant's wallet, because the officers testified that they did not believe defendant to be under arrest at that moment. However, the proper inquiry is whether there was probable cause to arrest the defendant before the contents of the note were read by the officers, and the officers' subjective views are not controlling or dispositive. See, *e.g.*, *People v. Hoskins* (1984), 101 Ill. 2d 209, 213-14, 461 N.E.2d 941; *People v. Anderson* (1988), 169 Ill. App. 3d 289, 297, 523 N.E.2d 1034.

The case cited by defendant does not conflict with our conclusion that there was probable cause to arrest him before the officers began to search his personal belongings. In *People v. Thomas* (1984), 123 Ill.

App. 3d 857, 463 N.E.2d 832, the appellate court determined that the defendant's arrest was not supported by probable cause, because the police believed that the victim had been dead only three days, while the defendant had last been seen with the victim six days prior to the discovery of her death. In the instant cause, there was no three-day gap in time between defendant's departure from the trailer, any estimated time of the victim's death, or the discovery of his girlfriend's body in the trailer.

■ Defendant also asserts that the State waived any argument that the officers had probable cause to arrest defendant at the scene, because this claim was not made to the trial court. Even assuming *arguendo* that this claim was waived, we may nevertheless consider the merits of the State's argument on appeal. See, *e.g., People v. Hoskins* (1984), 101 Ill. 2d 209, 219, 461 N.E.2d 941.

In light of this disposition, we do not address the parties' arguments with respect to whether the defendant consented to the officers' reading of defendant's note.

For the reasons stated, the order of the circuit court of Cook County that suppressed defendant's inculpatory statements is reversed and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.