THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ERNIE BELTON *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 1—86—0757, 1—86—0758 cons.

Opinion filed June 20, 1989.

1002

Steven Clark, Jeffrey A. Walker, and June Yvonne Wallace, all of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Lynda A. Peters, and David L. Studenroth, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendants were convicted at a bench trial of residential burglary. Before sentencing on this conviction, both defendants pleaded guilty to an earlier charge of possession of a stolen motor vehicle. The trial court then sentenced Ernie Belton to five years' and Ralph Powell to four years' imprisonment for the burglary, to run consecutively with the three-year sentence given both defendants for the possession charge. Defendants appeal, raising the following issues: (1) whether the trial court complied with Supreme Court Rule 402 (107 Ill. 2d R. 402) and determined that defendants' pleas of guilty to the charge of possession of a stolen motor vehicle were knowing and voluntary; (2) whether defendants were proven guilty of possession beyond a reasonable doubt; (3) whether section 5—8—4(h) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(h)) violates due process and the doctrine of separation of powers, and whether the sentences given defendants violate the prohibition against *ex post facto* laws; (4) whether the trial court erred in making Belton's sentences consecutive; and (5) whether the statute providing for the offense of possession of a stolen motor vehicle is unconstitutional.

Defendants were charged with two counts of theft and one count of residential burglary. During the hearing on their motion to dismiss the indictment, Belton testified that Powell came to his home at 635 West Barry in Chicago on November 1, 1985, at approximately 7 p.m. Defendants then went to a restaurant and later to a game room before returning to Belton's apartment; at approximately 9:30 p.m., they went out again. As they exited the lobby of Belton's building,

they encountered Chicago police officer Albert Augustine, who asked them what they were doing. Belton replied that he lived in the building, and Augustine responded that they should go about their business. Powell corroborated this testimony; however, although Augustine stated that he went to 635 West Barry at 9:30 on November 1, 1985, to deal with a disturbance, he testified that he did not remember seeing Belton or Powell in the lobby at that time.

Belton further testified that, as defendants walked along Broadway towards a lounge at Addison and Broadway, approximately three minutes after they saw Augustine in the lobby, they noticed him driving a car north on Broadway. Powell saw the car turn onto Belmont. Augustine also testified that he turned north on Broadway after leaving the building. It began to rain, so defendants turned and began walking back towards Belton's apartment. They went south on Broadway to Briar Place, then turned right on Briar and left down an alley, toward the gangway of Belton's building. They stopped to urinate in the alley because the toilet in Belton's apartment was not working.

While they were in the alley, Augustine pulled up in his car. According to Belton, he and Augustine recognized one another, and Augustine told Belton that he had seen defendants turn down the alley and had followed them. Augustine conducted a pat down search and found a knife on Belton; he then went to the area where Powell was "taking a leak" and searched the area behind a fence, where he found a television set, video recorder and a bag of old clothes. Belton claimed that Augustine then handcuffed both him and Powell, and beat Powell "because he said he was taking a leak." Augustine called on his radio to determine whether there had been a burglary and, after learning there had been one at 614 Barry, he brought defendants to a parking lot near that address. Belton testified that Augustine began talking to a lady who claimed to have seen the burglars but, after looking at defendants, she indicated they were not the thieves.

In his testimony, Augustine denied telling defendants that he had followed them, denied that he had spoken to a woman at any time that night and stated that no one told him that he or she had seen the burglars. He testified that he and his partner were at Wellington and Broadway at approximately 10:30 p.m., on November 1, 1985, when they received a radio call that a burglary had just occurred. They proceeded north to Briar, and after turning left on Briar, as they passed an alley, they saw a black male, later identified as Powell, placing a television set behind a fence. Augustine backed the car up, shut off the lights, then pulled the car into the alley, where

he saw two males walking toward him. He conducted a pat down search of Belton and found a small pocketknife as well as "other property" in a flap pocket in the waistband of his sweat pants. Augustine placed defendants under arrest and took them in his car to the area of 614 Barry, where he unsuccessfully "looked for witnesses."

The trial judge denied the motion to dismiss the indictment. The parties then moved that relevant evidence taken in the motion to dismiss the indictment be incorporated with the evidence taken at trial. During the bench trial, Harold Gahan testified that he left his apartment at 614 Barry at 8 p.m. and returned at approximately 10:20 p.m. on the night of November 1, 1985. He saw that a television set, a video recorder and the cabinet in which they were stored were missing from the apartment, that the back door was open and that a stereo component was placed at the back door. Upon entering the master bedroom, he saw that a weight set in the room had been thrown on the waterbed, and that a pair of diamond cufflinks and a graduation ring were missing.

While waiting for the police, Gahan noticed that the screen on the left side front window was ripped open and that the frame of the front door was pulled away. When the police arrived, Gahan went to the back of the building and identified his television set, video recorder and cabinet. When his roommate, John Muller, arrived home they went to the police station, where Gahan identified his ring and cufflinks. Gahan stated that all their missing property was returned to them; however, Muller testified that he was missing a ring and a watch, that he had not noticed them missing until a month before trial, and that he was not certain whether they had been taken during the burglary.

Augustine testified that at approximately 10:30 p.m., he and his partner received a radio call that a burglary had just occurred at 614 Barry and that the offenders were possibly nearby. Augustine drove north on Broadway and turned left on Briar, which is one block north of Barry. He did not turn on Barry because he saw a squad car on that street. As he passed an alley, he saw a black male place a television set behind a fence. Augustine continued to testify to basically the same information he gave at the motion to dismiss the indictment. His partner, Bocconcelli, confirmed Augustine's testimony.

Belton's wife testified that on February 1, 1986, she went to the county jail and received the sweat pants Belton was wearing on the night of his arrest. She stated that the pants had no pockets; however, she also admitted that the pants were in Belton's possession

from the time of his arrest until the date she received them.

The judge found defendants guilty of residential burglary. At the sentencing hearing, both defendants pleaded guilty to a prior charge of possession of a stolen motor vehicle. The trial judge then sentenced Belton to five years' and Powell to four years' imprisonment for the burglary, to run consecutively with a three-year sentence for the possession of a stolen motor vehicle for each defendant. They now appeal.

▆▆ Defendants first argue that the trial court erred in not determining whether their guilty pleas were knowing and voluntary, pursuant to *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, and Supreme Court Rules 402(a) and (b). However, defendants failed to bring a motion to withdraw their guilty pleas and to vacate the judgment, as required by Supreme Court Rule 604(d), which provides in pertinent part:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to withdraw his plea of guilty and vacate the judgment." (107 Ill. 2d R. 604(d).)

Such a failure "is a jurisdictional defect which prevents this court from entertaining an appeal from that judgment unless the defendant has not been properly admonished *** that he must file such a motion in order to preserve his right to appeal." (*People v. Potts* (1985), 136 Ill. App. 3d 1059, 1061, 484 N.E.2d 306; see also *People v. Wilk* (1988), 124 Ill. 2d 93, 529 N.E.2d 218; *People v. Stacey* (1977), 68 Ill. 2d 261, 369 N.E.2d 1254; *People v. Young* (1977), 56 Ill. App. 3d 106, 371 N.E.2d 646.) Defendants were properly admonished in this case; therefore, this matter is not properly before this court.

However, even if we were to consider defendants' contentions, we would decline to grant them the relief they seek, for Supreme Court Rules 402(a) and (b) provide as follows:

> "In hearings on pleas of guilty, there must be substantial compliance with the following:
>
> (a) Admonitions to Defendant. The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> (1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive

sentences;

(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and

(4) that if he pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him.

(b) Determining Whether the Plea is Voluntary. The court shall not accept a plea of guilty without first determining that the plea is voluntary. \*\*\* The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea." 107 Ill. 2d Rules 402(a), (b).

During the sentencing hearing, the judge had the following colloquy with defendants:

"THE COURT: All right. Mr. Belton and Mr. Powell, you are each charged with possession of a stolen motor vehicle. How do you plead to that charge, guilty or not guilty?

DEFENDANT BELTON: Guilty.

DEFENDANT POWELL: Guilty.

THE COURT: You each understand in pleading guilty you are waiving your right to any kind of trial. You know the law. You could have what is known as a bench trial, where I hear the evidence without a jury or you could have what is known as a jury trial, that is a proceeding wherein 12 citizens would be selected to occupy that jury box. They would hear all the evidence in the case and they would make a determination of your innocence or guilt based on the evidence. But by pleading guilty you are both indicating to me that you do not want either a bench trial or a jury trial. You are submitting yourself to the mercy of this Court without a trial. Is that your understanding, Mr. Belton?

DEFENDANT BELTON: Yes, sir.

THE COURT: Mr. Powell?

DEFENDANT POWELL: Yes.

THE COURT: You understand the nature of the charge; I am going to read from this document I have in front of me called an "Information." It states that on the 1st day of May, 1985, you each committed the offense of possession of a stolen

motor vehicle in that each of you not being entitled to possession of a motor vehicle, that being a Honda motorcycle, that you each had possession of that vehicle, being the property of a Roger Warner, spelled W-a-r-n-e-r, and that each possessed that vehicle knowing it had been stolen. That is the way the formal charge against you reads. Do you understand that, Mr. Belton?

DEFENDANT BELTON: Yes, sir.

THE COURT: Mr. Powell?

DEFENDANT POWELL: Yes, sir.

THE COURT: Do you understand on your plea to that charge, that I could sentence you to go to the penitentiary anywhere between three and seven years. It is a Class 2 felony. There is a provision that if I did send you to the penitentiary, you would be given one day of good-time credit for each day that you serve. What that means very simply on a three-year sentence with good-time credit, you could be out in a year and a half. On a seven year sentence, you would be out in three and a half years. There is also a provision that would place you on what is known as mandatory supervised release for a period of two years. What that means is after having served your time in the penitentiary, you still would be under the supervision of the prison authorities for a period of two years after having served your sentence.

Do you understand that, Mr. Belton?

DEFENDANT BELTON: Yes, sir.

THE COURT: Mr. Powell?

DEFENDANT POWELL: Yes, sir.

THE COURT: Do each of you understand in pleading guilty of this particular charge, because of the finding of guilty on the other charge, residential burglary, I could have this sentence run concurrent or rather consecutive to the other sentence; and what that means is after serving your time on the sentence which I will give you on the residential burglary, you would then start serving time on the sentence that I place against you on the possession of a stolen motor vehicle.

* * *

Do each of you understand that? Mr. Powell?

DEFENDANT POWELL: Yes, sir.

THE COURT: Mr. Belton?

DEFENDANT BELTON: Yes, sir.

THE COURT: Understanding everything I told you, do you

still wish to plead guilty to this charge of possession of a motor vehicle? Mr. Belton?

DEFENDANT BELTON: Yes, sir.

THE COURT: Mr. Powell?

DEFENDANT POWELL: Yes, sir."

Defendants maintain that, by saying "I could have this sentence run concurrent or rather consecutive," the judge gave them the impression that he could make their sentences either concurrent or consecutive, when in actuality he had to make them consecutive. (Ill. Rev. Stat. 1987, ch. 38, par 1005—8—4(h).) According to defendants, the judge misrepresented the law. They also claim that the judge failed to advise them of their right to persist in a plea of not guilty and that they waived their right to confrontation and their privilege against self-incrimination by pleading guilty, as well as failed to ascertain whether their plea was the product of threats of coercion.

The State responds that *Boykin* does not mandate specific admonitions, but requires only that the record affirmatively disclose that a defendant who pleads guilty does so "understandingly and voluntarily" (*People v. Reeves* (1971), 50 Ill. 2d 28, 29, 276 N.E.2d 318); that the purpose of Rule 402 is to make an affirmative showing, in the record, "that a defendant voluntarily and understandingly enters his plea of guilty before it is accepted in accordance with the guidelines established by the Supreme Court in *Boykin* (*People v. Taylor* (1982), 110 Ill. App. 3d 1140, 443 N.E. 2d 699; see also *People v. McCoy* (1979), 74 Ill. 2d 398, 385 N.E. 2d 696); that Rule 402 requires only substantial and not literal compliance (*People v. Krantz* (1974), 58 Ill. 2d 187, 317 N.E.2d 559); and that the judge's remarks must be read in a practical and realistic manner to determine whether an ordinary person in the circumstances of the accused would understand them as conveying the information required by the rule. (*Taylor*, 110 Ill. App. 3d at 1147.) The State further contends that it is clear from the entire record that the trial court substantially complied with Rule 402, and that defendants' pleas were knowing and voluntary. The State also asserts that defendants had just stood trial on the burglary charge, knew what the right to trial encompassed, and therefore knew what they were waiving. It also notes that defendants never made any claim that their pleas were coerced.

■ We apprehend nothing in *Boykin* or in Rule 402 which requires a trial judge to catechize defendants on the requirements thereof. Here, defendants were advised as to their right to a trial, the nature of the charges against them, and the maximum and minimum sentences which could be imposed. After each admonishment,

defendants indicated that they understood what the judge was imparting to them. In explaining consecutive sentences to defendants, the judge made it clear that his comment "I could have the sentence run concurrent[,] rather consecutive to the other sentence" was a misstatement, which he satisfactorily remedied. Defendants complain that the judge said "I could" rather than "I must" have them run consecutively; however, considering all the judge's comments (*People v. Taylor* (1982), 110 Ill. App. 3d 1140, 443 N.E.2d 699), we hold that there has been substantial compliance with Rule 402 and that defendants were adequately informed with respect to sentencing. In this regard, we note that the sentence for residential burglary is not less than four years and not greater than 15 years (Ill. Rev. Stat. 1987, ch. 38, pars. 19—3, 1005—8—1), and the sentence for possession of a stolen motor vehicle is not less than three years and not more than seven years. (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103; Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1.) Defendants did not plead pursuant to an agreement with the State and, as their combined sentences are still within the maximum sentence for residential burglary, we cannot say that defendants were prejudiced by the court's failure to inform them *in haec verba* of a mandatory consecutive sentence. *People v. Baker* (1985), 133 Ill. App. 3d 620, 479 N.E.2d 372.

Defendants next argue that the State failed to prove that they knowingly and without authority entered the dwelling of another with the intent to commit a felony or theft (Ill. Rev. Stat. 1985, ch. 38, par. 19—3(a)), and therefore did not prove that they were guilty of residential burglary. Defendants maintain that the only evidence the State presented was that they were in possession of stolen property on the same day that the burglary occurred.

■ In *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160, the supreme court held that recent and exclusive possession of items stolen in a burglary, without reasonable explanation, cannot by itself give rise to an inference that the possession was obtained by burglary. Use of this inference would not infringe upon due process rights if: (i) there is a rational connection between the accused's recent possession of property taken in the burglary and his participation in the burglary; (ii) his guilt of burglary is more likely than not to flow from his recent, unexplained and exclusive possession of burglary proceeds; and (iii) there was evidence corroborating defendant's guilt. 84 Ill. 2d at 424.

Defendants maintain that their guilt of the burglary in this case

does not flow more likely than not from their recent possession of burglary proceeds, and that there was not corroboration of their guilt. They emphasize that the burglary could have occurred any time between 8 p.m., when Gahan left his apartment, and 10:20 p.m., when he returned. They note that they encountered Augustine in the lobby of Belton's building at 9:30 p.m., and argue that they could not have been burglarizing Gahan's apartment at that time. They suggest that someone else could have left the stolen property in the alley long before they came on the scene, and they "could have easily happened upon the loose goods and picked them up unknowingly." In support of their contention that the evidence does not corroborate their guilt, defendants note that no fingerprints were discovered and that some of Muller's missing property was not recovered, citing *People v. Ross* (1981), 103 Ill. App. 3d 883, 431 N.E.2d 1267. In that case, Ross was found in possession of stolen stereo equipment; however, there was no evidence of forcible entry into the victim's apartment, or that defendant had entered her apartment or even been in her building that day; the burglary could have occurred any time during the nine hours before defendant was found with the stereo; and defendant's possession was not entirely unexplained, as he claimed he had found the stereo. The appellate court reversed his conviction for burglary, holding that the first two elements of *Housby* were not satisfied. 103 Ill. App. 3d at 886-87.

The State responds that circumstantial evidence may be used to prove a burglary (*People v. Richardson* (1984), 104 Ill. 2d 8, 470 N.E.2d 1024; *People v. Terrell* (1984), 99 Ill. 2d 427, 459 N.E.2d 1337), and that the only inference that can be drawn from the evidence in the instant case is that defendants committed the burglary. It asserts that defendants' testimony that they stopped in the alley, in the rain, to urinate, even though only a minute away from Belton's apartment, is "unreasonable," and it argues that, although "an accused need not justify or explain his presence at or near the scene of a crime, *** if he chooses to do so while denying his guilt, he must tell a reasonable story or be judged by the improbability of his explanation." (*People v. Delp* (1980), 85 Ill. App. 3d 463, 466, 406 N.E.2d 903.) It maintains that here there was evidence of forcible entry and that shortly after the burglary took place defendants were found a block away in possession of many items taken during the burglary. Thus, it contends, their guilt is more likely than not to flow from their possession of the burglary proceeds. Additionally, the State argues, the police officer's testimony corroborates defendants' guilt.

██ ■ The trial judge, as the trier of fact, observed the witnesses and heard their testimony, and most assuredly resolved any issues of credibility in favor of the State. It is not for us to supplant the judgment of the trier of fact on questions of credibility. (*People v. Dunklin* (1982), 104 Ill. App. 3d 685, 432 N.E.2d 1323.) Augustine testified that minutes after receiving notice of burglary having "just occurred" he saw Powell place a television set behind a fence in the alley, and he recovered stolen property from both defendants. This evidence corroborates defendants' guilt. Moreover, based on Gahan's testimony, the trial judge could reasonably have concluded that the burglary had not occurred earlier in the evening, but rather was in progress when Gahan returned home (*e.g.*, a stereo component was by the back door). Defendants' due process rights were not violated in this case, and therefore we affirm their convictions on this issue.

Defendants next argue that section 5—8—4(h) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(h)) violates due process and the doctrine of separation of powers, and that their sentences violate the constitutional prohibition against *ex post facto* laws. Section 5—8—4(h), which became effective on September 25, 1985, provides as follows:

"If a person charged with a felony commits a separate felony while on pre-trial release, any sentence imposed upon conviction of that separate felony shall be consecutive to any sentence imposed upon conviction of the original felony." Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(h).

Defendants maintain that the statute presumes that one who commits a felony while on pretrial release for another felony should be prevented from committing further criminal conduct against the public by means of consecutive sentence, without consideration of the seriousness of the felonies involved or the prior criminal record of the individual involved. They claim that this presumption is mandatory, and thus the presumed fact, that the public must be protected by means of consecutive sentencing, must flow beyond a reasonable doubt from the proven fact, that an individual has committed a felony while on pretrial release from another felony charge, in order to satisfy due process requirements. (*Ulster County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 90 S. Ct. 2213.) Defendants further claim that the presumed fact does not so flow. They note that section 5—8—4(b) provides as follows:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the

opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(b)).) They assert that trial judges must be free to give individualized consideration in making sentencing decisions.

Defendants also contend that the power to impose sentence is a judicial function (*People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855), and that the legislature usurped that power by enacting section 5—8—4(h). Additionally, they maintain their sentences violate the prohibition against *ex post facto* laws, because defendants committed the first felony before section 5—8—4(h) was in effect, yet it was applied to them. At the time they committed the offense of possession of a motor vehicle, defendants could have been given concurrent sentences, had they committed another felony while on pretrial release; however, under section 5—8—4(h), upon conviction for a second felony, a consecutive sentence became mandatory.

■ The State argues that defendants have waived their arguments regarding section 5—8—4(h) and their sentences by not raising them before the trial court. (*People v. Kerker* (1984), 121 Ill. App. 3d 1072, 460 N.E.2d 771.) It further argues that it is within the legislature's province to define offenses and determine the penalties required to protect the interest of society (*People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059), and that the legislature has wide discretion to prescribe penalties for defined offenses. (*People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029.) A strong presumption of constitutional validity attaches to legislative enactments, and the party attacking a law has the burden of showing that it is unreasonable, clearly arbitrary and has no foundation in the legislature's police power. (*People v. Copeland* (1980), 92 Ill. App. 3d 475, 415 N.E.2d 1173.) The test is whether a statute is reasonably designed to remedy the evils which the legislature has determined threaten the public health, safety and general welfare (*Bradley*, 79 Ill. 2d at 417), and, the State argues, section 5—8—4(h) is reasonably designed to remedy the threat posed by people who commit crimes while on bond. The State also notes that similar constitutional challenges have been rejected by Illinois courts: *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059; *People v. Rodriguez* (1985), 134 Ill. App. 3d 582, 480 N.E.2d 1147 (mandatory natural life sentencing provision of Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(c)); *People v. Sims* (1987), 166 Ill. App. 3d 289, 519 N.E.2d 921, *cert. denied* (1988), ___ U.S. ___, 102 L. Ed. 2d 92, 109 S. Ct. 118; *People v. Hartfield*

(1985), 137 Ill. App. 3d 679, 484 N.E.2d 1136 (mandatory life imprisonment under habitual criminal statute, Ill. Rev. Stat. 1983, ch. 38, par. 33B—1). Additionally, the State maintains, section 5—8—4(h) does not infringe upon judicial authority, because it allows the court broad discretion in determining the duration of each sentence, within permissible bounds.

With regard to defendants' claim that their sentences violate the prohibition against *ex post facto* laws, the State asserts that section 5—8—4(h) did not increase the penalty imposed for an offense which occurred prior to the effective date of that statute; rather, it created an enhanced penalty for offenses occurring subsequent to the effective date. The section did not apply to defendants until they committed the burglary while on pretrial release for possession of a stolen motor vehicle. The burglary occurred after the effective date of the section, and thus there is no *ex post facto* problem.

■■ We agree with the State that section 5—8—4(h) does not violate due process or the doctrine of separation of powers. Neither did it enhance the punishment of a crime committed prior to its enactment. Section 5—8—4(h) applied to defendants only after they committed the residential burglary, which was after the statute became effective. Thus, there can be no *ex post facto* issue in this case.

■■ Defendants also contend that they should have been given the opportunity to choose whether to be sentenced under the sentencing scheme in effect when they committed the offense of possession of a stolen motor vehicle or that in effect when they were convicted for the burglary. Because they are complaining of their consecutive sentences, which were mandatory after they committed the burglary, and because they committed the burglary after section 5—8—4(h) was in effect, we can perceive of no reason why they should be given that choice.

■■ Defendant Belton next argues that the State failed to prove that he was on pretrial release when he allegedly committed the burglary. The State responds that Belton did not object when the prosecutor argued that he committed the burglary while out on bond for possession of a stolen motor vehicle, and that the presentence investigation report indicates that the possession of a stolen motor vehicle charge was an open charge at the time of the burglary. It is clear from the record that Belton was on pretrial release at the time of the burglary. Defendants also assert that there was no presentence report at the time they were sentenced; however, the judge clearly stated for the record that he was "in receipt of a presentence investigation report[,] *** [c]opies of which were given both to counsel

representing the defendants and the State." The record fails to disclose any contradiction on anyone's part of those remarks of the judge.

Defendants' final argument is that the possession of a stolen motor vehicle statute (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)) is unconstitutional, because the penalty for that offense is greater than that for theft of a motor vehicle (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(c)), of which it is a lesser included offense. (*People v. Johnson* (1978), 64 Ill. App. 3d 1018, 382 N.E.2d 85.) Our supreme court has recently rejected this argument in *People v. Bryant* (1989), 128 Ill. 2d 448. The court held that under the current statutory scheme, possession of a stolen motor vehicle is no longer to be considered a lesser offense of theft.

> "The steady increase in the penalty provision for possession of a stolen motor vehicle is indicative of the legislature's intent to make possession of a stolen motor vehicle a separate, more serious offense than theft, rather than a lesser included offense." (*Bryant*, 128 Ill. 2d at 448.)

The court then upheld section 4—103, stating:

> "We believe that the legislature's decision to steadily increase the penalty for possession of a stolen motor vehicle was designed to distinguish possession of a stolen motor vehicle from theft in order to remedy the increasing frequency of the offense of possession of a stolen motor vehicle and its related activities. Therefore, we hold that section 4—103(b) of the Vehicle Code is reasonably designed to protect the public from the evils of the offense of possession of a stolen motor vehicle and its related activities. As such, section 4—103(b) of the Vehicle Code does not violate sections 2 and 11 of article I of the Illinois Constitution." 128 Ill. 2d at 457-58.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BILANDIC, P.J., and DiVITO, J., concur.