THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROY ALLEN, Defendant-Appellant.

First District (4th Division)   No. 1—88—0910

Opinion filed August 30, 1990.

James W. Reilley, of Des Plaines, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Gael O'Brien, and Patrick J. Finley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial, Roy Allen, defendant, was found guilty of possession of cannabis with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 705(e)), possession of cocaine with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)), and unlawful use of a weapon by a felon (Ill. Rev. Stat. 1985, ch. 38, par. 24—1). He was sentenced to concurrent terms of 25 years for possession of cocaine with intent to deliver, seven years for the possession of cannabis with intent to deliver, and five years for the unlawful use of a weapon by a felon. The court also ordered that the 25-year sentence was to run consecutively with a four-year sentence imposed in another case.

On appeal, defendant raises the following issues: (1) whether the trial court erred in denying his motion to suppress; (2) whether sections 5—8—4(h) and 5—8—4(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—4(h), (i) (hereinafter the Code)) are constitutional; and (3) whether the court abused its discretion in sentencing defendant to a term of 25 years for the possession of cocaine with intent to deliver.

We affirm.

At defendant's suppression hearing, Chicago police officer John Tuttle testified that at approximately 9:30 a.m. on March 14, 1987, he responded to a call that a man with a gun was holding a woman at 30 East Division Street, apartment 5-East, in Chicago. Officer Tuttle proceeded to the scene where, upon exiting the elevator on the fifth floor, he observed Patty Pearson emerge from the stairwell with a bloody face. Officer Tuttle testified that there were also two other officers on the scene.

When Pearson saw the officers, she exclaimed that "there is a man over there with a gun" and pointed to apartment 5-East. There is some question as to whether Pearson told Officer Tuttle that defendant had beat her or whether she told him "they" had beat her. Officer Tuttle then proceeded to apartment 5-East. After knocking at the door twice without response, defendant finally opened the door to the apartment on the third knock. When defendant opened the door, Officer Tuttle noticed that defendant had a gun in his hand. A woman, Marie Altman, was standing behind defendant.

Defendant dropped his gun inside of the apartment and was then arrested. Officer Tuttle retrieved the gun, which was dropped approximately three feet inside of the doorway. At one point in his testimony, Officer Tuttle stated that while he was retrieving the gun, Pearson told him that there was another person inside of the apartment other than defendant and Altman. However, at another point in his testimony, he stated that Pearson had already been taken to the hospital when he retrieved the gun.

Officer Tuttle then entered the apartment with several other officers in search of this third party. While in the closet of one of the bedrooms, Officer Tuttle discovered weapons, clothing with the tags still attached, and camera equipment. In another bedroom he discovered large stacks of boxes and electronic equipment. He also found more weapons in the closet of that room.

In a third room in the apartment, which had been locked, Officer Tuttle observed plastic garbage bags filled with crushed green plants. Based on prior experience, Officer Tuttle believed that the bags contained marijuana. A safe, electronic equipment, and two attache cases were also found in the room.

A dog from the canine unit was later brought in to determine whether there were narcotics inside the safe. The dog's handler informed Officer Tuttle that there were narcotics in the safe after observing the dog barking and sniffing at the safe.

Officer Robert Dworak corroborated Officer Tuttle's testimony in that he observed Pearson standing in the stairwell with blood on her

face; that Pearson pointed in the direction of apartment 5-East and exclaimed that "they" were in there; that defendant was observed with a revolver in his hand and that a woman was standing behind him when defendant opened the door; and that he entered the apartment with Officer Tuttle and several other officers. Officer Dworak did not participate in the search of the apartment.

Officer Jacqueline Niccoli, who arrived after several officers had already entered the apartment, also corroborated Officer Tuttle's testimony in that she observed blood on Pearson's face; that Pearson stated that a third person was in the apartment; that a green leafy substance was observed in a large plastic bag; and that she observed a dog from the canine unit howl and scratch at the safe. Officer William Tremore, Officer Niccoli's partner, testified that he also observed what appeared to be marijuana in clear plastic bags in defendant's apartment.

The trial court made specific findings of fact including that there was probable cause to arrest defendant. The court also found that the seizure of the gun, the cocaine, marijuana and the safe was proper. However, the court found that the seizure of the noncontraband items was not supported by probable cause and granted defendant's motion to suppress with respect to the noncontraband items.

Defendant was found guilty, in a stipulated bench trial, of possession of cannabis with intent to deliver, possession of a controlled substance with intent to deliver, and illegal use of a firearm by a felon. He was sentenced to 25 years on the possession of a controlled substance with intent to deliver, which was to be served consecutively with a four-year sentence imposed in another case. He was also sentenced to concurrent terms of seven years for the possession of cannabis with intent to deliver and five years for the illegal use of a firearm by a felon. It is from this decision that defendant appeals.

■ Defendant first argues that the trial court erred in denying his motion to suppress evidence. He contends that his warrantless arrest was without probable cause. Probable cause is determined by the facts and circumstances of each case as they are known to the arresting officer at the time of the arrest. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276-77.) Facts and circumstances must exist to warrant a reasonable man to believe that the offense was committed by the arrestee. (*People v. Fuller* (1986), 141 Ill. App. 3d 737, 742.) The trial court's findings of probable cause will not be disturbed unless manifestly erroneous. *People v. Clay* (1984), 124 Ill. App. 3d 140, 148.

■ We do not find that the trial court's decision was manifestly erroneous when it found that there was probable cause to arrest

defendant. Defendant argues that Officer Tuttle's testimony was incredible because he contradicted himself when at one point he testified that Pearson stated that defendant beat her and at another point he testified that Pearson stated that "they" beat her. Defendant also notes that although the police officers responded to a call to come to the scene because a man was holding a woman with a gun, they did not know the identity of the victim or the perpetrator. Defendant argues that these circumstances would not support a finding of probable cause, but, rather, constitute mere suspicion, which is not sufficient to justify a warrantless arrest. (See *People v. Fletcher* (1978), 66 Ill. App. 3d 502.) We disagree.

The facts reveal that when Officers Tuttle and Dworak arrived at the scene they observed Pearson standing in the stairwell with blood on her face. Pearson pointed to apartment 5-East and explained that the perpetrators were in that apartment. When defendant finally opened the door to the apartment, after the officers had knocked three times, he was holding a gun. The fact that there were slight inconsistencies in Officer Tuttle's testimony or that the perpetrator was not identified by the police dispatcher is inconsequential under the facts in this case. We, therefore, find that the trial court properly ruled that there was probable cause to arrest defendant.

■ Next, defendant argues that even assuming, *arguendo*, that the arrest was lawful, the warrantless seizure of the gun was outside of the scope of an exception to the warrant requirement. The warrantless search of an arrestee is justified if that search is conducted in the area of the arrestee's immediate control. (*Chimel v. California* (1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040.) If the evidence that is seized is outside of the arrestee's immediate control, the seizure is valid if the items are inadvertently discovered in plain view in a place where the police have a right to be and there is probable cause to believe that the items constitute proceeds or the instrumentality in a crime. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465-66, 29 L. Ed. 564, 582-83, 91 S. Ct. 2022, 2037-38.

■ In the instant case, the gun was, arguably, seized in an area within defendant's immediate control. However, even if assuming, *arguendo*, that the gun was seized in an area not within defendant's immediate control, the seizure clearly falls within the plain view exception as enunciated in *Coolidge*. Defendant, on the other hand, argues that pursuant to *Vale v. Louisiana* (1970), 399 U.S. 30, 26 L. Ed. 2d 409, 90 S. Ct. 1969, if a warrantless search of a house incident to an arrest is to be upheld, that arrest must take place inside of the house. In the instant case, defendant argues that the arrest took place

outside of the house and therefore the seizure of the gun was not valid. We disagree.

There is some question as to whether the arrest took place inside or outside of the apartment. Defendant contends that the arrest took place outside of the apartment. The State maintains that the gun, which was found inside of the apartment, was seized contemporaneously with defendant's arrest. The State further clarified this issue in oral arguments before this court when it pointed out that the arrest did, in fact, take place within the apartment. We, therefore, find *Vale* inapplicable to the facts in this case.

■ Defendant also contends that the warrantless entry into his apartment subsequent to his arrest was outside of the scope of the exigent circumstances exception to the warrant requirement. "[P]olice may make a warrantless entry into private premises based on circumstances confronting them at the time of entry indicating that an emergency situation exists." *People v. Lewis* (1979), 75 Ill. App. 3d 259, 276.

We find that the officers' entry into defendant's apartment was proper under the exigent circumstances exception as the officers were under the impression that there might have been another armed offender in the apartment.

■ Defendant further contends that even if the officers' entry into the apartment was valid under the exigent circumstances exception, the search of the locked closet and seizure of the items therein, including some briefcases, was beyond the scope of the exception. We also find this argument to be without merit.

Defendant was found guilty of possession with intent to deliver marijuana and cocaine. These substances were found in a safe and on a nightstand. We agree with the State that since no evidence was introduced regarding the briefcases or their contents, any error regarding the seizure of the briefcases was harmless pursuant to *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

We find that the officers' entry into the locked closet in which the safe was found was also justified under the exigent circumstances exception, since it is reasonable to believe that the other offender may have sought refuge in this closet. We also find that the seizure of the safe was justified in that, as the State argues, its discovery would have been inevitable since it was in plain view and defendant allegedly admitted that the safe contained drugs and money. "[W]here the evidence of an offense obtained illegally would inevitably have been discovered lawfully, it will be considered admissible." (*People v. Hoskins* (1984), 101 Ill. 2d 209, 221.) The trial court, therefore, did

not err in denying defendant's motion to suppress.

██ ▮ The second issue defendant raises for our review is whether sections 5—8—4(h) and 5—8—4(i) of the Code (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—4(h), (i)) violate the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, §1) if construed as mandatory.

Section 5—8—4(h) provides:

"If a person charged with a felony commits a separate felony while on pre-trial release, any sentence imposed upon conviction of that separate felony shall be consecutive to any sentence imposed upon conviction of the original felony." Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(h).

Section 5—8—4(i) provides:

"If a person admitted to bail following conviction of a felony commits a separate felony while free on bond, any sentence following conviction of the separate felony shall be consecutive to that of the original sentence for which the defendant was on bond." Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(i).

Defendant argues that the legislature is attempting to mandate the imposition of sentences which is an exclusive function of the judiciary. Although the power to impose a sentence is a function of the judiciary, the legislature has the power to enact laws governing judicial practice which do not unduly infringe upon the inherent powers of the judiciary. (*People v. Davis* (1982), 93 Ill. 2d 155, 161.) However, a statute should be interpreted so as to avoid doubts as to validity. *People v. Taylor* (1984), 102 Ill. 2d 201, 207.

There is a strong presumption that a statute is constitutionally valid. The party challenging the statute has the burden of showing that it is unreasonable, clearly arbitrary and has no foundation in police power. (*People v. Belton* (1989), 184 Ill. App. 3d 1001, 1013.) We do not find that defendant has met this burden.

Sections 5—8—4(h) and 5—8—4(i) were reasonably designed to remedy the threat posed by persons who commit crimes while on bond. (See *People v. Dowthard* (1990), 197 Ill. App. 3d 668; *People v. Brown* (1989), 182 Ill. App. 3d 491.) The court in *Belton* found that mandatory application of section 5—8—4(h) did not violate the separation of powers doctrine, since the purpose of the section (to remedy the threat posed by persons on bond) was constitutionally valid. The court was also in accord with the State's argument that the section does not infringe upon judicial authority because it allows the court broad discretion in determining the duration of each sentence within permissible bounds. (*Belton*, 184 Ill. App. 3d at 1014.) We agree with

the *Belton* court and find that section 5—8—4(h) does not violate the separation of powers. Moreover, we find that this rationale and holding would also apply to section 5—8—4(i).

■ Finally, defendant argues that the trial court abused its discretion by sentencing defendant to an excessive term of 25 years on one of the counts. Defendant claims that the trial court failed to give adequate consideration to defendant's rehabilitative potential and that the State improperly apprised the court of a pending felony charge.

The court stated, with respect to the pending felony charge, that it would not consider the charge. Further, we find nothing in the record which would indicate that the trial court was influenced by this charge in its determination of defendant's sentence.

The trial court is not required to give greater weight to the possibility of rehabilitation than to the seriousness of the offense. (*People v. Partin* (1987), 156 Ill. App. 3d 365, 373.) It is not necessary for the trial court to articulate or assign a value to each fact upon which it relies in determining a sentence. *People v. Lucien* (1982), 109 Ill. App. 3d 412, 420.

In the instant case, we find that the trial court did consider the opportunity for defendant's rehabilitation, among other mitigating factors. The court also considered the seriousness of the offense. Under the circumstances of this case, we do not find that the trial court abused its discretion in sentencing defendant. Absent an abuse of discretion, the trial court's decision will not be disturbed. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153.

Accordingly, the decision of the trial court is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $75 as costs and fees for this appeal, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, and *People v. Nicholls* (1978), 71 Ill. 2d 166.

Affirmed.

LINN and JIGANTI, JJ., concur.